(59 App. Div. 400.)

### LESLIE v. SARATOGA BREWING CO. et al.

(Supreme Court, Appellate Division, Third Department. March 8, 1901.)

1.. MORTGAGES—FORECLOSURE—SALE—BID—ACCEPTANCE—CONTRACT—VACATING.

Where a bid at a mortgage foreclosure sale is accepted by the referee, and the 10 per cent. of the purchase price is paid as required, it is not a contract which the court is obliged to complete or enforce, but, if justice requires it, the sale may be vacated, and a new one ordered.

2. SAME—FAILURE TO COMPLY WITH BID—RESALE—LIABILITY FOR DIFFERENCE.

The president of the mortgagor at the foreclosure sale bid $100 more for the property than a subsequent lienor, believing the premises to be worth more than his bid. On the acceptance of his bid, and not having the 10 per cent. of the price in cash to pay down, he offered a check or a draft, and asked a day's adjournment, when he would produce the cash. The referee, refusing to accept the check or draft, though it did not appear that the bidder was not responsible, and also to adjourn the sale, called the bidders back, and again offered the property for sale, when the president offered to withdraw his bid in favor of the lienors, who were creditors of the mortgagor, which they refused, and the property was sold for less than the president's bid. It was a common practice in the county to adjourn foreclosure sales to enable the purchaser to procure the 10 per cent. to pay down. *Held*, that the bidder was not liable for the difference between the bid and the selling price on the resale.

Chase, J., dissenting.

Appeal from special term, Saratoga county.

Foreclosure of a mortgage by Mrs. Frank Leslie against the Saratoga Brewing Company and others. From an order directing him to pay to the referee the difference between his bid at the foreclosure sale and the selling price on a resale, Daniel Gaffey appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

John T. Norton, for appellant.

James MacGregor Smith (J. Newton Fiero, of counsel), for respondents Neidlinger & Sons.

Fletcher W. Battershall, for respondent Balthaser Baker.

PER CURIAM. By the bid which the appellant, Daniel Gaffey, made, he offered to purchase the mortgaged premises at the price of $21,600, and, although the referee accepted that offer, it was not a contract which the court was obligated to complete or enforce. If to the court it appeared that justice to any of the parties interested required it, the sale, even though Gaffey had paid the 10 per cent. required, might have been vacated, and a new one ordered. The cir-

cumstances under which Gaffey made the bid in question do not indi-
cate any intent on his part to trifle with the court. He bid $21,600,
and he swears that, in his judgment, the premises were worth more
than that sum. We do not discover in the record that such statement
is anywhere contradicted. Neidlinger & Sons, who, as subsequent
lienors to the mortgage being foreclosed, claimed to be entitled to all
the surplus the premises would produce, bid $21,500, but allowed them
to be struck off to Gaffey at his bid of $100 more. The sale was had
in the village of Saratoga Springs, and Gaffey resided in the city of
Troy. It seems that he had not with him money sufficient to pay the
10 per cent. required by the terms of sale to be then paid down; but
he offered to give his own check for the same, or a draft upon his
father for that amount. At the instance of the plaintiff's attorney,
the referee refused to accept either, and demanded cash, or such paper
as the plaintiff's attorney would approve. It does not appear that
Gaffey was not pecuniarily responsible for that amount, nor that his
check, if given, would not have been paid. He also asked that the
sale be adjourned one day, that he might procure the 10 per cent.,
which was also denied. Upon it appearing that Gaffey was not then
in a condition to pay the 10 per cent., the referee at once called the
bidders back, and again put the premises up for sale. It appears
that all who were present when the premises were struck off to
Gaffey were present at this second sale. Gaffey then and there of-
fered to withdraw his bid, and allow the premises to be struck off
to Neidlinger & Sons on their bid of $21,500. They, however,
promptly refused, saying that they now expected to get the premises
at a much lower figure than that. The premises were thereupon put
up and again sold, and struck off to John T. Norton for the sum of
$18,700; the said Neidlinger & Sons having bidden a sum slightly
below that amount. On the first sale, Gaffey, who was the president
of the mortgagor, was bidding in its interest, and he and Neid-
linger & Sons were the only parties who did bid, except the plaintiff's
attorney bid enough to cover the sum due upon the mortgage and
for costs. The sum of $18,700, procured by the referee upon the last
sale, was sufficient to pay all the mortgage debt and costs, and left
a surplus in his hands of some $6,607.48. McLean, the attorney who
bid for and was advising Gaffey, swears that he had attended many
mortgage sales in that county, and that it was frequently the practice
to give time to the bidder to procure the 10 per cent. required to be
paid down; and it would seem that his client, Gaffey, had acted upon
this occasion upon that theory. The order from which this appeal
is taken directs that Gaffey pay the difference between the $21,600
bid by him and the $18,700 realized upon the second sale, being the
sum of $2,900, to the referee. It is made upon the motion of Neid-
linger & Sons. Evidently it is an attempt on their part to secure
such sum as surplus money arising upon the sale. We are of the
opinion that the circumstances of this case, as above detailed, do
not require the court to enforce so severe a forfeiture against Gaffey
for their sole benefit. It is plain that his conduct has not, in fact,
worked any such injury to their interests. They refused to take the
premises at their own bid of $21,500, with the avowed purpose of

enforcing from Gaffey any deficiency that should arise upon the resale. They also objected to giving him a day's time to procure the $2,160, and so secure to the mortgagor the benefit of the purchase, but now seek to procure the sum of $2,900 from him by way of a forfeiture for not completing such purchase. The contest is evidently between Gaffey, representing the mortgagor, and Neidlinger & Sons, its creditors; and, as between them, there is no equity that requires the enforcement of such a penalty. This conclusion does not in the least sustain any willful attempt to bid without intending to purchase, or in any manner to trifle or interfere with the orderly progress of a judicial sale. It furnishes no precedent for any such case. In our opinion, this record fails to show that Gaffey was acting with any such intent. On the contrary, we believe he bid only what he believed and intended the mortgagor should and would pay, and failed to perform only because he did not understand that he must have on hand in cash a certain per cent. of the purchase price. His conduct was not in contempt of the court, nor did it work any injury to Neidlinger & Sons. Hence we conclude that the order should be reversed, without costs.

CHASE, J. (dissenting). So far as appears in the record, defendant Gaffey bid on the property without having made any definite arrangement that would justify a prudent man in assuming that he could comply with the terms of sale. The talk he had with his father was indefinite and uncertain. The talk among the directors of the brewing company about Gaffey protecting their interests at the sale does not seem to have been backed by any plan for raising the money to make the purchase. The best that can be said of Gaffey's position is that when he bid on the property he hoped to be able to raise money subsequent to the property being struck down to him with which to pay the amount of the bid. There was nothing done at the sale to mislead a bidder, and the appellant bid on the property with full knowledge of the terms of sale. I am unwilling to hold that such a defaulting bidder should escape entirely the consequences of his bid. The order should be modified by striking out the ordering part thereof, and in place thereof directing that a judgment be entered against the defendant Daniel Gaffey for $2,900 in favor of the defendant which would have been entitled to receive the same if it had been paid to the referee by the bidder, and was now surplus in the custody of the court; and also directing a further hearing at special term on the usual notice, to determine which defendant is entitled to such judgment.