OPINION OF THE COURT
Peter P. Rosato, J.
Plaintiff moves to vacate a foreclosure sale held on June 7, 1985 in White Plains, New York, for the sale of real property known as 95 Woodworth Avenue, Yonkers, New York, to enjoin Referee Cerrato from executing a deed to the premises, and to direct a new sale of said premises.
Defendant Cerrato cross-moves to dismiss the application.
As described in greater detail in plaintiff’s affidavit, it is plaintiff’s position that Referee Cerrato acted arbitrarily on the foreclosure sale by virtue of denying plaintiff a short 10-minute adjournment so that plaintiff could go to his local bank to obtain a certified check representing 10% of plaintiff’s $67,000 bid. Plaintiff represents that counsel for the judgment creditors had also requested the Referee to accede to plaintiff’s request, without success.
Thereafter, on a second bidding, plaintiff represents that Referee Cerrato refused to accept a check tendered on behalf of one of the judgment creditors for the required 10% down payment on a similar $67,000 bid. However, since said check was uncertified, defendant declined to accept it.
Thereafter, on a third round of bidding, defendant accepted *1106 a $35,000 bid for the property from a Mr. Woodrow, upon which Woodrow tendered a 10% cash down payment.
Plaintiff’s central argument is that defendant acted improperly in that his actions were geared simply to accommodate his own personal appointment schedule and that the bid ultimately accepted was patently low.
Defendant, on the other hand, defends his actions under the "terms of sale” of the foreclosure, which he represents he read immediately in advance of the sale and, inter alia, expressly call for a 10% down payment to be tendered to the Referee "in form acceptable to the Referee.” Defendant also represents that the usual practice at foreclosure sales is that down payments are tendered either in the form of cash or certified check.
Plaintiff, on the other hand, in the reply memorandum of law submitted by counsel, does not quarrel with the form of down payment required by the defendant. Rather, he argues that he had no prior knowledge of the "rules of the game” and that the requirement for cash or a certified check was made known to him only after his bid was apparently accepted.
"[I]t is well settled that mere inadequacy of price * * * does not furnish sufficient grounds for vacating a sale”. (See, Guardian Loan Co. v Early, 47 NY2d 515, 521 [1979].) However, the Guardian court went on to provide (at p 521), that "[w]here the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity such as fraud, mistake or exploitive overreaching, a court of equity may grant relief’.
Here, defendant represents that counsel for the judgment creditor Audrey Laufer has indicated that the subject premises have a value of between $80,000 to $90,000. Therefore, the accepted bid of $35,000 represents anywhere between 38.9 and 43.75% of value. While "foreclosure sales at prices below 10% of value have consistently been held unconscionably low * * * there is no definitive rule for sale prices that range between 10% and 50% of value.” (See, Polish Natl. Alliance v White Eagle Hall Co., 98 AD2d 400, 408 [2d Dept 1983].) While the sale at issue in Polish Natl. Alliance realized some 37% of alleged market value, very similar to the bid accepted herein, the Polish Natl. Alliance court set down defendant White Eagle’s motion to set aside for a hearing in view of the fact that a potentially meritorious issue regarding an alleged *1107 collusive agreement to suppress bidding had been raised. Pivotally, no such issue has been raised herein, nor has plaintiff even alleged any ground sounding in fraud, mistake, or other exploitive overreaching.
Rather, plaintiff relies principally on the decision of the Honorable John F. Scileppi in Alben Affiliates v Astoria Term. (34 Misc 2d 246 [Sup Ct, Queens County 1962]). There, it is true that the court set aside a foreclosure sale where, as here, the Referee asked for a certified check and then denied the bidder’s request for a 10- to 20-minute adjournment to obtain the necessary certified check. However, plaintiff fails to point out two factors which serve to distinguish Alben (supra) from the instant case. First, on its face, there is nothing in the opinion in Alben to indicate whether or not the Referee there acted pursuant to terms of sale such as those followed in the instant case, which expressly empowered the Referee to accept payment in such form as was acceptable to the Referee.
Whether announced just prior to the start of the bidding process or, as plaintiff contends, immediately after he placed his $67,000 bid, there is no question raised here as to the form of the down payment being improper, or that the terms of the sale were in fact made known at the sale, which is all the statute requires. (See, RPAPL 231 [4].)
Secondly, the bid accepted in Alben (supra) was in an amount of $24,000, which was plainly grossly inadequate in view of the fact that the property there was valued at approximately $350,000 to $400,000. No such gross inadequacy occurred here.
Therefore, this court feels that Alben (supra) on closer inspection, is distinguishable from the instant case.
Moreover, this court has to weigh the older cases, such as Alben (supra); Zouppas v Yannikidou (16 AD2d 52 [1st Dept 1962]); and Matter of Philip (220 NY 644 [1917]), in light of the holdings of recent leading cases, such as Guardian Loan (supra), and Polish Natl. Alliance (supra), which take the position that public policy requires a cautious exercise of the power to nullify judicial sales.
Accordingly, plaintiff’s application to vacate and set aside the foreclosure sale of June 7, 1985 is in all respects denied; defendant’s cross motion to dismiss plaintiff’s application in its entirety is hereby granted.