[802 NYS2d 737]

In the Matter of STEPHEN L. O'BRIEN, Respondent, v ELIOT SPITZER, as Attorney General of the State of New York, Appellant.

Second Department, October 17, 2005

APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General*, New York City (*Michael S. Belohlavek* and *David Lawrence III* of counsel), appellant pro se.

*O'Brien & O'Brien, LLP*, Nesconset (*Stephen L. O'Brien* pro se, *Daniel P. O'Brien,* and *John Denby* of counsel), for respondent.

## OPINION OF THE COURT

SKELOS, J.

The petitioner was appointed the referee in a mortgage foreclosure action and pursuant to the judgment of foreclosure and sale of the Supreme Court, Suffolk County, conducted a public auction and sold the property in foreclosure. Thereafter, a federal civil rights action was commenced in the United States District Court for the Eastern District of New York against, among others, the petitioner in his official capacity as referee, to set aside the foreclosure sale, to recover damages, and for injunctive relief. Eliot Spitzer, as the Attorney General of the State of New York (hereinafter the Attorney General), denied the petitioner's request for representation in the underlying action pursuant to Public Officers Law § 17 on the ground that the petitioner, as a court-appointed referee, was an independent contractor excluded from coverage under the statute. The petitioner commenced this proceeding pursuant to CPLR article 78 to review the determination of the Attorney General as arbitrary and capricious and to direct the Attorney General to provide a defense in the underlying federal action. The Supreme Court granted the petition and directed the Attorney General to provide representation for the petitioner pursuant to Public Officers Law § 17. The Attorney General appeals.

Public Officers Law § 17 directs the State of New York to provide for the defense of an "employee" in any civil action "arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his [or her] public employment or duties" (Public Officers Law § 17 [2] [a]). Public Officers Law § 17 (1) (a) defines the term "employee" as "any person holding a position by election, *appointment* or employment in the service of the state . . . but shall not include an indepen-

dent contractor" (Public Officers Law § 17 [1] [a] [emphasis added]). The statute provides that the duty to defend and indemnify is conditioned upon, inter alia, delivery to the Attorney General by the employee of the summons and complaint in the underlying action (*see* Public Officers Law § 17 [4]). By implication, this vests the Attorney General with the authority, in the first instance, to determine whether a person is an "employee" within the meaning of Public Officers Law § 17 entitled to defense and indemnification by the State.

Following a denial by the Attorney General of a request for a defense under Public Officers Law § 17 (2), the employee can challenge that determination in a CPLR article 78 proceeding in the Supreme Court (*see Frontier Ins. Co. v State of New York*, 239 AD2d 92 [1997]; *Matter of Spitz v Abrams*, 123 Misc 2d 446 [1984], *affd* 105 AD2d 904 [1984]). When reviewing such an agency determination, the court must decide if the determination was arbitrary and capricious (*see Matter of Doerrbecker v Saunders*, 229 AD2d 490, 492). "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). "Moreover, judicial review of an administrative determination is limited to the grounds invoked by the agency" (*Matter of Doerrbecker v Saunders, supra* at 492, citing *Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 758 [1991]).

The Supreme Court correctly concluded that the Attorney General's determination that the petitioner was an independent contractor not entitled to defense and indemnification lacked a rational basis in light of the facts and circumstances presented. As the Attorney General explained in an opinion exploring the applicability of Public Officers Law § 17, "an employee works under the supervision and control of an employer who directs the manner in which the employee's work shall be done. When there is no direct control over the manner in which work is performed, the worker is classified as a consultant or independent contractor" (1998 Ops Atty Gen No. F 98-2, at 7 [citation omitted]). Courts clearly exercise sufficient control and supervision over the work of a referee appointed in a foreclosure proceeding to qualify that appointee as an "employee" within the meaning of Public Officers Law § 17.

A referee appointed to conduct a judicial sale is an "agent of the court," a "mere ministerial officer" who cannot make a sale

except in compliance with the terms of the judgment (*Mullins v Franz*, 162 App Div 316, 317, 318 [1914]; *see Banque Arabe Et Internationale D'Investissement v One Times Sq. Ltd. Partnership*, 223 AD2d 384 [1996]; *Morgan v Ellenville Sav. Bank*, 55 AD2d 178 [1976]; *Long Is. City Sav. & Loan Assn. v Suggs*, 78 Misc 2d 16 [1974]; *Franklin Natl. Bank v De Giacomo*, 44 Misc 2d 518 [1964]). Any effort on the part of the referee to alter the terms of sale fixed by the judgment of foreclosure is void and the court, in its broad supervision and control over all judicial sales, may reform such a sale to correct "the substantial errors or unauthorized acts of the referee" (*Mullins v Franz, supra* at 317; *see Greenwood Packing Profit Sharing Plan Trust v Fournier*, 181 AD2d 861 [1992]; *Strianese v Paradiso*, 128 AD2d 696 [1987]; *Morgan v Ellenville Sav. Bank, supra; Crisona v Macaluso*, 33 AD2d 569 [1969]).

A referee "may not arbitrarily conduct the sale, schedule or reschedule sale dates, or give public notice in such a manner as to have the effect of limiting the number of prospective bidders, or detrimentally affect the number or amounts of possible bidders" (*Long Is. City Sav. & Loan Assn. v Suggs, supra* at 18). A referee's role is "purely ministerial" (*Morgan v Ellenville Sav. Bank, supra* at 180) and in selling the property, he or she may not expand (*id.*) or limit (*see Strianese v Paradiso, supra*) the terms of the sale provided for in the judgment, or "interfere with equities established by the court" (*Franklin Natl. Bank v De Giacomo, supra* at 520). "At a foreclosure proceeding, the actual sale is made by the referee, as an officer of the court, and the contract is basically between the purchaser and the court" (*Jorgensen v Endicott Trust Co.*, 100 AD2d 647, 648 [1984], citing *Lane v Chantilly Corp.*, 251 NY 435, 437-438 [1929]).

In light of the limited discretion a referee in a foreclosure proceeding has in conducting a judicial sale, and the court's absolute right to direct him or her to act in accordance with equity and fairness, it follows that such an appointee in the service of the State should be classified as an "employee" within the meaning of Public Officers Law § 17 (1) (a).

The Attorney General's finding to the contrary was not entitled to deference. Courts will defer to an agency's interpretation of a statute it is charged with administering where the application of the statute "involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). "Where,

however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*id.; see Lorillard Tobacco Co. v Roth*, 99 NY2d 316 [2003]; *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359 [1999]; *Matter of Union Indem. Ins. Co. of N.Y.*, 92 NY2d 107 [1998]; *Seittelman v Sabol*, 91 NY2d 618 [1998]; *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225 [1996]; *Matter of Jansen Ct. Homeowners Assn. v City of New York*, 17 AD3d 588 [2005]; *Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 14 AD3d 553 [2005]).

Here, distinguishing an "employee" in the service of the State entitled to defense and indemnification from an "independent contractor" exempt from such coverage does not require the specialized knowledge or expertise of the Attorney General. These are general statutory terms the meanings of which can be readily understood by consideration of the relevant language, design, and purpose of the statute and by reference to judicial precedent. As indicated above, the Attorney General acknowledged that the concept underlying application of Public Officers Law § 17 is that of supervision and control over the manner in which the appointee conducts his or her work (*see* 1998 Ops Atty Gen No. F 98-2). This is a concept well-rooted in the common law and frequently used by the courts to distinguish employees from independent contractors in a variety of legal contexts (*see e.g. Matter of Hertz Corp. [Commissioner of Labor]*, 2 NY3d 733 [2004] [unemployment insurance context]; *Parisi v Loewen Dev. Corp.*, 5 AD3d 646 [2004] [tort context]; *Bhanti v Brookhaven Mem. Hosp. Med. Ctr.*, 260 AD2d 334 [1999] [labor law context]).

In deciding whether Public Officers Law § 17 is applicable to a court-appointed referee in a foreclosure proceeding, the courts are fully capable of assessing the degree of supervision and control exercised over such an appointee to determine his or her status. This is a matter of pure statutory interpretation that does not require specialized knowledge or expertise. Under such circumstances, the Attorney General's interpretation is not entitled to deference (*see Lorillard Tobacco Co. v Roth, supra; Matter of Dworman v New York State Div. of Hous. & Community Renewal, supra; Matter of Union Indem. Ins. Co. of N.Y., supra; Seittelman v Sabol, supra; Matter of Gruber [New York City Dept. of Personnel—Sweeney], supra; Matter of Jansen Ct.*

*Homeowners Assn. v City of New York, supra; Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y., supra).* In addition, an administrative determination must be accepted by the courts only "if it has warrant in the record and a reasonable basis in [the] law" (*Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971], quoting *NLRB v Hearst Publications, Inc.*, 322 US 111, 131 [1944] [internal quotation marks omitted]). As the above analysis indicates, the Attorney General's determination that a referee in a foreclosure proceeding is an independent contractor has no reasonable basis in the law.

Having erroneously determined that the petitioner was an independent contractor, the Attorney General never reached the issue of whether a defense of the petitioner was authorized. In this regard, "[t]he Attorney-General's role is similar to that of an insurance company which must decide if a defense is owed under its policy" (*Mathis v State of New York*, 140 Misc 2d 333, 339 [1988]; *see Frontier Ins. Co. v State of New York*, 87 NY2d 864, 867 [1995]; *Matter of LoRusso v New York State Off. of Ct. Admin.*, 229 AD2d 995 [1996]; *Matter of Sharrow v State of New York*, 216 AD2d 844, 845 [1995]). The Attorney General must review the complaint to determine if it is alleged that the employee committed a wrongful act while acting within the scope of his or her employment (*see Matter of Sharrow v State of New York, supra*). If the complaint does not definitively allege that the petitioner was acting within the scope of his or her public employment or duties, the Attorney General may properly look "behind the pleading to the facts underlying the occurrence" to make that determination (*Mathis v State of New York, supra* at 339; *see Matter of Sharrow v State of New York, supra* at 846). "Like an insurance company, the only time the Attorney-General can deny a defense based upon his determination that the employee was acting outside the scope of employment is when the facts are so clear-cut that reasonable minds could reach no other conclusion" (*Mathis v State of New York, supra* at 339, citing *Servidone Constr. Corp. v Security Ins. Co. of Hartford*, 64 NY2d 419, 424 [1985]; *see Frontier Ins. Co. v State of New York, supra* at 867; *Matter of LoRusso v New York State Off. of Ct. Admin., supra* at 995).

Here, while the first amended complaint in the underlying federal action did not definitively allege that the court-appointed referee was acting within the scope of his public duties, the complaint clearly stated that the referee was being sued "as Referee." The first amended complaint alleged, inter alia, that

the referee "did not adequately caution the successful bidder and the bidder's assignee and [the mortgagee] to refrain from engaging in 'self-help' to access [the foreclosed property] prior to the date the entire purchase price was paid and the referee's deed was tendered." The first amended complaint further alleged that referee did not adequately explain that a codefendant in that action was claiming an interest in the title to the foreclosed property "and that therefore the successful bidder would merely be purchasing the rights to the mortgage rather than a fee interest" in the property. These are among the acts which allegedly gave rise to violation of the federal plaintiff's civil and contractual rights.

It is clear that these alleged oversights took place within the context of the petitioner's public duties as an appointed official conducting a judicial sale. As such, the Attorney General was obligated to provide the petitioner with a defense in the underlying federal civil rights action. Accordingly, the judgment is affirmed, with costs.

H. MILLER, J.P., COZIER and GOLDSTEIN, JJ., concur.

Ordered that the judgment is affirmed, with costs.